**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
NO. 16-1250

| | |
|---|---|
| MICHAEL WILSON | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL MINE SAFETY & HEALTH | ) |
| REVIEW COMMISSION and | ) |
| JIM BROWNING | ) |
| | ) |
| Respondents | ) |

Petition for Review of a Final Order of the
Federal Mine Safety & Health Review Commission

_____

**REPLY BRIEF FOR MICHAEL WILSON**

_____

TONY OPPEGARD
P.O. Box 22446
Lexington, Kentucky 40522
859-948-9239
tonyoppegard@gmail.com

WES ADDINGTON
EVAN B. SMITH (admission pending)
APPALACHIAN CITIZENS' LAW CENTER
317 Main Street
Whitesburg, Kentucky 41858
606-633-3929
wes@appalachianlawcenter.org
evan@appalachianlawcenter.org
*Attorneys for Michael Wilson*

# TABLE OF CONTENTS

TABLE OF CASES, STATUTES & OTHER AUTHORITIES ...................... ii

GLOSSARY ................................................. vi

INTRODUCTION/SUMMARY OF ARGUMENT ....................... 1

ARGUMENTS:

A. THE COURT NEED NOT REACH BROWNING'S CAUSE OF
   ACTION ARGUMENT; REGARDLESS, THE MINE ACT
   PROVIDES A CAUSE OF ACTION AGAINST BROWNING
   BECAUSE HE IS A "PERSON" WHO WILSON COMPLAINS
   HAS INTERFERED WITH HIS STATUTORY RIGHTS
   UNDER THE MINE ACT ...................................... 2

B. THE COURT NEED NOT REACH BROWNING'S 1ST
   AMENDMENT ARGUMENT; REGARDLESS, BROWNING'S
   CONDUCT AND SPEECH WERE NOT PROTECTED BY THE
   1ST AMENDMENT .................................................. 18

CONCLUSION ........................................................ 25

## TABLE OF CASES, STATUTES & OTHER AUTHORITIES

**CASES CITED**:                                                    **PAGE**

*Aguilar v. Avis Rent A Car System, Inc.*, 980 P.2d 846              21
*(Cal. 1999)(Werdegar, J., concurring)*

*Begay v. United States*, 128 S.Ct. 1581 (2008)                     15

*Bell v. Hood*, 66 S.Ct. 773 (1946)                                 13

*Bryant v. Dingess Mine Service, et al.*, 10 FMSHRC 1173 (1988)     9

*Camreta v. Greene*, 131 S.Ct. 2020 (2011)                          20

*Clark v. Martinez*, 125 S.Ct. 716 (2005)                           19

*Council of Southern Mountains, Inc. v.  FMSHRC*,
*751 F.2d 1418 (D.C. Cir. 1985)*                                    16

*Davis v. Passman*, 99 S.Ct. 2264 (1979)                            13

*Franklin v. Gwinnett County Public Schools*, 112 S.Ct. 1028 (1992) 13

*Gross v. FBL Financial Services*, 129 S.Ct. 2343 (2009)            4

*Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010)  3-4

*Hughes Aircraft Co. v. Jacobson*, 118 S.Ct. 755, 760 (1999)       4

*I.N.S. v. Orlando Ventura*, 123 S.Ct. 353 (2002) (per curiam)      7

*Lyng v. Northwest Indian Cemetery Protective Assn.*,               20
*108 S.Ct. 1319 (1988)*

*McCarthy v. Madigan*, 112 S.Ct. 1081 (1992)                        7

*Meredith v. FMSHRC*, 177 F.3d 1042 (D.C. Cir. 1999)                    12

*Michael Wilson v. Jim Browning*, 38 FMSHRC 1161
*(ALJ, 2016)*                                                           19, 20

*NLRB v. Gissel Packing Co.*, 89 S.Ct. 1918 (1969)                     21, 24

*Old Dominion Branch No. 96, Nat'l Ass'n of Letter Carriers*           24-25
*v. Austin*, 94 S.Ct. 2770, 2775 (1974)

*RAG Cumberland Resources, LP v. FMSHRC*, 272 F.3d 590                  8
*(D.C. Cir. 2001)*

*R.A.V. v. City of St. Paul, Minn.*, 112 S.Ct. 2538 (1992)             20

*Rollins Envt'l Servs. (NJ), Inc. v. U.S. E.P.A.*, 937 F.2d 649        6
*(D.C. Cir. 1991)*

*SEC v. Chenery Corp.*, 63 S.Ct. 454 (1943)                            6

*Secretary of Labor v. Austin Powder Co.*, 29 FMSHRC 909 (2007)        6

*Secretary of Labor v. Excel Mining, LLC*, 334 F.3d 1 (D.C. Cir. 2003) 8

*Secretary of Labor o/b/o Bowling, et al. v. Mountain Top Trucking*    9
*Co., Mayes, Riley & Mayes*, 19 FMSHRC 166 (ALJ 1997)

*Secretary of Labor o/b/o Bowling v. Perry Transport, Caldwell*        9
*Trucking & Caldwell*, 15 FMSHRC 836 (ALJ 1993)

*Secretary of Labor o/b/o Brown v. Boogar Man Mining, Moore*           9
*& Hunter*, 20 FMSHRC 493 (ALJ 1998)

*Secretary of Labor o/b/o Bushnell v. Cannelton Industries, Inc.*,     2, 8
*867 F.2d 1432 (D.C. Cir. 1989)*

*Secretary of Labor o/b/o  Clark v. Eldridge Coal Co., Jim Eldridge*          9
*& Charles Eldridge. 8 FMSHRC 1968 (ALJ 1986)*

*Secretary of Labor o/b/o Gray v. North Star Mining & Brummett,*          9
*27 FMSHRC 1 (2005)*

*Secretary  of  Labor o/b/o Greenwell v. Armstrong Coal Co.,*          7
*36 FMSHRC 3330 (ALJ 2014)*

*Secretary of  Labor o/b/o. Jones, Jr. v. Virginia Carbon, Inc.,*          9
*Clevinger, Delaney, Keen & Keen, 11 FMSHRC 2297 (ALJ 1989)*

*Secretary of Labor o/b/o  Knotts v. Tanglewood Energy, Inc.,*          9
*Burke & Key, 19 FMSHRC 833 (1997)*

*Secretary of Labor o/b/o McClain, et al.  v. Misty Mountain*          7-8
*Mining*, *Osborne & Ratliff, 27 FMSHRC 690 (ALJ 2005)*

*\* Secretary of Labor o/b/o McGary & Bowersox, et al. v.*
*Marshall County Coal Co., et al., 38 FMSHRC 2006 (2016)*          22, 23

*Secretary of Labor o/b/o Shemwell v. Armstrong Coal Co.*, *et al.,*          23
*35 FMSHRC 1865 (ALJ 2013)*

*Spiegel v. Schulman*, *604 F.3d 72 (2d Cir. 2010)(per curiam)*          14

*Tasty Baking Co. v. NLRB*, *254 F.3d 114 (D.C. Cir. 2001)*          22, 23

*Williams v. Lockheed Martin Energy Sys.*, *Inc., No. 98-059,*          10
*2001 WL 111604, at \*13 (Admin. Rev. Bd. 2001)*
*(Cooper Brown, Member, concurring in part and dissenting in part)*

*Winston Madden v. Ronald Summers & Sumco, 11 FMSHRC 2027*          9
*(ALJ 1989)*

\* Authorities chiefly relied upon are marked with an asterisk.

**STATUTES CITED**:

18 USC §924(e)(2)(B)(ii)

29 USC §158(c)

30 USC §802(f)

30 USC §813(f)

30 USC §814(a)

30 USC §814(b)

30 USC §814(g)(1)

30 USC §815(c)(1)

30 USC §815(c)(2)

30 USC §815(c)(3)

30 USC §816(a)

30 USC §817(a)

30 USC §818(a)(1)

30 USC §820(a)

30 USC §820(c)

30 USC §820(e)

30 USC §820(g)

30 USC §823(d)(2)(A)(iii)

42 USC §2000e-5(b)

## **OTHER AUTHORITIES CITED:**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation*    15
*of Legal Texts,* 202–05 (2012)


S. Rep. No. 95-181, 95th Cong., 1st Sess. (1977), *reprinted in* S.
Subcommittee on Labor, Committee on Human Resources, *Legislative
History of the Federal Mine Safety & Health Act of 1977*    10

## **GLOSSARY**


FMSHRC = Federal Mine Safety & Health Review Commission

MSHA = Mine Safety & Health Administration

NLRA =  National Labor Relations Act

NLRB =  National Labor Relations Board

UMWA = United Mine Workers of America

## INTRODUCTION/SUMMARY OF ARGUMENT

Jim Browning ("Browning") makes three arguments in his brief: (1) that there is no cause of action under §105(c)(1) of the Mine Act against non-management employees such as himself; (2) that he had a 1st Amendment right to harass Wilson while Wilson was performing his statutory duties as a representative of miners; and (3) that even if there is a cause of action against non-management employees and even if his words and conduct were not protected by the 1st Amendment, the ALJ correctly ruled that his words and conduct did not rise to the level of interference prohibited by §105(c)(1).

Because Browning did not raise the cause of action argument below, the Court should decline to consider it on appeal. In addition, because the ALJ did not consider Browning's 1st Amendment argument below, the Court should decline to hear this constitutional argument now.

Browning's entire argument, moreover, is grounded on a faulty premise - i.e., that he is precisely the type of miner whom the Mine Act was designed to protect (Browning Br. 20-21, 22, 44).[1]  In fact, in a misguided attempt to label himself as a victim in this matter, Browning goes so far as to refer to himself as a "vulnerable miner" (Browning Br. 22).

---

[1]  References to the brief filed by Browning herein are designated "Browning Brief _____" followed by the applicable page number.

However, when Congress declared that "the primary purpose of the Mine Act was to protect mining's most valuable resource - the miner"[2], its purpose was to protect the safety and health of miners from violations of mandatory standards that can cause death and serious injuries on the job, and to protect miners and their representatives who make safety complaints, refuse to work in unsafe conditions, and carry out the duties of representatives of miners, including traveling with mine inspectors during inspections of the mines. Congress did not intend to protect miners who harass "representatives of miners' who are exercising their statutory rights by standing up and speaking out for safety in the workplace. In short, §105(c)(1) was  designed to protect miners' reps like Wilson from being harassed and interfered with by persons like Browning.

## ARGUMENTS

### A.  THE COURT NEED NOT REACH BROWNING'S CAUSE OF ACTION ARGUMENT; REGARDLESS, THE MINE ACT PROVIDES A CAUSE OF ACTION AGAINST BROWNING BECAUSE HE IS A "PERSON" WHO WILSON COMPLAINS HAS INTERFERED WITH HIS STATUTORY RIGHTS UNDER THE MINE ACT

Browning's cause of action argument is contrary to the plain language of the statute and a correct understanding of its legislative history.

---

[2]  See *Secretary of Labor o/b/o Bushnell v. Cannelton Industries, Inc., 867 F.2d 1432, 1437 (D.C. Cir. 1989)*.

-2-

The operative language of the Mine Act is at 30 U.S.C. § 815(c)(1).  As

Wilson explained in his opening brief, that section provides:

> "**No person shall** discharge or in any manner discriminate against
> or cause to be discharged or cause discrimination against or otherwise
> **interfere with the statutory rights of any** miner, **representative of
> miners** or applicant for employment ... **because of the exercise by
> such** miner, **representative of miners** or applicant for employment
> **on behalf of himself or others of any statutory right afforded by
> this Act**" (emphasis added); *see also* Br. for Wilson 15-16.

Although Browning acknowledges that "the Act prohibits individuals,

including non-management miners from interfering with representatives of miners

as they exercise their statutory rights" (Browning Br. 26),  he argues that Congress

did not provide a cause of action for miners' representatives like Wilson against non-

management miners like himself.  Browning's argument, however, is contrary to the

text of the statute.

Wilson's cause of action is provided by the other subsections of 30 U.S.C. §

815(c).  Subsection (2) provides:

> Any miner or applicant for employment or representative of miners who
> believes that he has been discharged, interfered with, or otherwise
> discriminated against by any person in violation of this subsection may,
> within 60 days after such violation occurs, file a complaint with the
> Secretary alleging such discrimination.

And if the Secretary chooses not to pursue the complaint, then subsection (3)

provides a complainant like Wilson with a private cause of action. Subsection (3) says, "the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission, charging discrimination or interference in violation of paragraph (1)."

Accordingly, it is plain from the statute that when a miners' representative such as Wilson "believes that he has been . . . interfered with . . . by *any person*" that he can file a complaint before the Secretary and if the Secretary declines the case, may "file an action in his own behalf before the Commission." 30 U.S.C. §§ 815(c)(2)–(3).

The intuitive definition of "person" applies because the Mine Act defines a "person" as including "any individual." 30 U.S.C. § 802(f).

This plain language should end the inquiry. Statutory construction "begins with the language of the statute. And where the language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 118 S.Ct. 755, 760 (1999).

Browning, however, argues that the plain language should be set aside based on his view of the legislative history and statutory scheme. The Court, however, should reject this argument for two reasons.

First, this invitation to inquire into the legislative history of the Mine Act should be declined. The text of the statute is generally supreme and "the ordinary meaning of that language accurately expresses the legislative purpose." *Hardt v.*

-4-

*Reliance Standard Life Ins. Co*., 130 S.Ct. 2149, 2156 (2010) (quoting *Gross v. FBL Financial Services*, *129 S.Ct. 2343, 2350 (2009))*.

Second, the Court should prudentially decline to address this legal issue because Browning did not properly raise it below and accordingly neither the agency adjudicators nor the agency attorneys addressed it in this case - an important fact in agency review cases.

Browning's appellate counsel attempt to avoid waiver by presenting statements that Browning made below as if those were a legal challenge to whether Wilson has a cause of action (Browning Br. 34–35). However, reviewing the briefing below, it is clear that Browning did not make a legal challenge to Wilson's authority to file an interference action against him, but rather argued that as a factual matter there was no interference. That is, before the agency, Browning argued that when the interference test is applied to the facts of this claim, that there was in fact no interference. On appeal, Browning raises for the first time an argument that even if there was interference, that Wilson should not be able to file an action against Browning. This second, much bolder issue was nowhere raised below.

This violates not only general waiver doctrine but also a specific provision of the Mine Act: "Except for good cause shown, no assignment of error by any party shall rely on any question of fact or law upon which the administrative law judge had

not been afforded an opportunity to pass." 30 U.S.C. § 823(d)(2)(A)(iii).

Further, even if the statements below could be understood as implicitly raising the issue, the issue would still not be properly raised because the statements below were made for the first time in the equivalent of a reply brief. This purported distinction concerning claims against non-management employees, was not affirmatively raised in Browning's opening brief (his memorandum to support his motion for summary decision), but rather was only raised passingly in Browning's response to Wilson's cross-motion for summary decision. In the posture of the claim below, this was effectively Browning's *reply* brief. Accordingly, Browning has not properly raised and preserved this issue under this Court's and the Commission's rules. *See Rollins Envt'l Servs. (NJ), Inc. v. U.S. E.P.A., 937 F.2d 649, 652 n.2 (D.C. Cir. 1991)* ("Issues may not be raised for the first time in a reply brief."); *Sec. of Labor v. Austin Powder Co., 29 FMSHRC 909, 921 (2007)* (declining to consider issue that was raised for the first time on appeal via a reply brief).

Browning's new argument on appeal also raises problems under *SEC v. Chenery Corp. [Chenery I], 63 S.Ct. 454, 462 (1943)*, which held "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." As the Supreme Court has reaffirmed, "A court of appeals should remand a case to an agency for decision

of a matter that statutes place primarily in agency hands." *I.N.S. v. Orlando Ventura*, *123 S.Ct. 353 (2002) (per curiam)*.  Granted, part of the idea of *Chenery* has to do with the agency's policymaking role and statutes such as the Mine Act that provide for "split enforcement" complicate the question of who makes policy for an agency. However, even setting aside the reality of the policymaking role of appellate adjudicators, there are other pragmatic reasons behind *Chenery* that promote judicial efficiency and separation of powers.  When a court allows an agency to speak first, an "agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Orlando Ventura*, *123 S.Ct. at 355-356*. The same idea that requires exhaustion of administrative remedies similarly counsels in favor of letting the agency actually speak before the court extends its resources and power to weigh in.  *See McCarthy v. Madigan*, *112 S.Ct. 1081, 1086-1087 (1992)*.

The agency's interpretation is important because in other cases both the Secretary of Labor and adjudicators of the Commission have agreed with Wilson's interpretation that individual, non-management employees can be subject to suit under § 815(c).  *See, e.g., Secretary of Labor o/b/o Greenwell v. Armstrong Coal Co., 36 FMSHRC 3330, 3331 (ALJ 2014)*.  In fact, *Greenwell* involved the same

Commission ALJ as in the instant case, which suggests that if she had ruled on

Browning's cause-of-action argument, she would have rejected it.[3]

This interpretation is not new or unique to the ALJ in this case. Individual

persons have regularly been subjected to suit under the Mine Act for decades. *See,*

*for example, Secretary of Labor o/b/o McClain, et al. v. Misty Mountain Mining*,

---

[3] In *Greenwell*, the miner filed his original interference complaint against Chris Oglesby ("Oglesby"), an hourly employee who had threatened him ("someone needs to shut you up") in the company bath house because Greenwell had notified MSHA that Armstrong Coal was cheating on its respirable coal dust sampling (by hanging the dust-collection devices in fresh air where they would not accurately measure the coal dust being breathed by miners). When he filed his complaint with MSHA, Greenwell specifically informed the agency that he was naming Oglesby individually as the respondent, and that he was not naming Armstrong Coal, because he did not have any evidence that the company had directed or encouraged Oglesby to harass/threaten him. Nonetheless, after investigating Greenwell's complaint, the Secretary of Labor filed a §105(c)(2) Complaint of Interference against *Armstrong Coal* with the Commission. Accordingly, Greenwell filed a motion to ask the ALJ to join Oglesby as a respondent - as an indispensable party - to the Secretary's action.

The ALJ denied Greenwell's motion to join Oglesby as a respondent to the case filed by the Secretary, but she instructed him to file his own §105(c)(3) action against Oglesby individually. In so doing, the ALJ noted that Oglesby is a "person" within the meaning of §105(c), and that the Secretary of Labor had likewise taken the position that Oglesby, an hourly employee, was a "person" under the Act's anti-discrimination/anti-interference provision. *Greenwell, 36 FMSHRC at 3331*. Of course, it is well-established that even when the Commission disagrees with the legal interpretation of the Secretary, it is the Secretary's position that is entitled to deference by the courts. *Sec. of Labor o/b/o Bushnell v. Cannelton Industries, Inc., 867 F.2d 1432, 1435 (D.C. Cir. 1989); Secretary of Labor v. Excel Mining, LLC, 334 F.3d 1, 6 (D.C. Cir. 2003); RAG Cumberland Resources, LP v. FMSHRC, 272 F.3d 590, 596 (D.C. Cir. 2001).*

-8-

*Osborne & Ratliff*, 27 FMSHRC 690 (ALJ 2005); *Secretary of Labor o/b/o Gray v. North Star Mining & Brummett*, 27 FMSHRC 1 (2005); *Secretary of Labor o/b/o Brown v. Boogar Man Mining, Moore & Hunter*, 20 FMSHRC 493 (ALJ 1998)[4]; *Secretary of Labor o/bo Bowling, et al. v. Mountain Top Trucking Co., Mayes, Riley & Mayes*, 19 FMSHRC 166 (ALJ 1997); *Secretary of Labor o/b/o Knotts v. Tanglewood Energy, Inc., Burke & Key*, 19 FMSHRC 833 (1997); *Secretary of Labor o/bo Bowling v. Perry Transport, Caldwell Trucking & Caldwell*, 15 FMSHRC 836 (ALJ 1993); *Winston Madden v. Ronald Summers & Sumco*, 11 FMSHRC 2027 (ALJ 1989); *Secretary of Labor o/b/o. Jones, Jr. v. Virginia Carbon, Inc., Clevinger, Delaney, Keen & Keen*, 11 FMSHRC 2297 (ALJ 1989); *Bryant v. Dingess Mine Service, et al.*, 10 FMSHRC 1173 (1988); *Secretary of Labor o/b/o Clark v. Eldridge Coal Co., Jim Eldridge & Charles Eldridge.* 8 FMSHRC 1968 (ALJ 1986).[5]

Thus, the Court should decline to address the cause-of-action issue due to Browning's waiver and the fact that the agency has not addressed it below.

---

[4] In *Boogar Man Mining*, the ALJ issued a cease and desist order against the mining company, its officers, agents, servants and *employees*, ordering them to stop their discriminatory actions against the miner.

[5] In *Eldridge Coal Company,* the ALJ determined that both the language of §105(c)(1) and its legislative history "unequivocally support" the position that individuals are subject to the Act's anti-discrimination provision. Therefore, he held the mine owners personally liable for the discrimination that had occurred. *8 FMSHRC at 1973-1974.*

Third, to the degree that the Court looks beyond the plain language of the statute on this issue, Browning is wrong on the legislative history and interpretation of the statute. His argument ignores directly relevant history and instead concocts a far-fetched alternative.

The Senate Report accompanying the Mine Act said, "**It should be emphasized that the prohibition against discrimination applies not only to the operator but to any other person directly or indirectly involved**" S. Rep. No. 95-181, 95th Cong., 1st Sess. (1977), *reprinted in* S. Subcommittee on Labor, Committee on Human Resources, *Legislative History of the Federal Mine Safety & Health Act of 1977* at 624 (1978)(emphasis added).

This makes plain that when the Mine Act says "person" it is not simply referring to mine operators, but rather to anyone else who may be involved in discrimination or interference.[6]

Further, when Congress sought to limit Mine Act actions to certain

---

[6] This is consistent with other whistleblower statutes with which the Department of Labor is involved. *See Williams v. Lockheed Martin Energy Sys., Inc.*, No. 98-059, 2001 WL 111604, at *13 (Admin. Rev. Bd. 2001) (Cooper Brown, Member, concurring in part and dissenting in part) (explaining that the whistleblower provisions of the Solid Waste Disposal Act (SWDA), Comprehensive Environmental Response Compensation and Liability Act (CERCLA), and Water Pollution Control Act (WPCA) are all patterned after the Mine Act and apply to individuals).

persons—such as operators or mine management—it did so explicitly. *See, for example,* 30 U.S.C. §814(a) (making "an operator" liable for citations); §814(b) (requiring "the operator . . . or his agent" to withdraw all persons from areas with violations that have not been abated); §817(a)(requiring "the operator" to withdraw all persons from areas of the mine with an imminent danger); §818(a)(1) and (2)(allowing Secretary to institute civil action in U.S. District Court for injunctive relief against "operator or his agent"); §820(a) (holding "an operator" liable for civil penalties); §820(c)(holding "any director, officer, or agent" potentially liable for a corporate operator's violations); §814(g)(1)(making "a miner" subject to a withdrawal order if he does not have required safety training); §820(g)(making a "miner" subject to a civil penalty for possessing smoking materials underground).

It follows then that when Congress used the more general word "person" in the Mine Act—as it did in the whistleblower provision at § 815(c)—that it did *not* impose limits on which individuals would be subject to an action.

This interpretation is not limited just to § 815(c). For example, § 820(e) makes "any person" subject to civil penalty for giving advance notice of any inspection. Just as it would not make sense to allow a non-management employee to be able to freely give advance notice of a mine inspection, it would not make sense to allow such an

-11-

employee to interfere with the statutory rights of miners' representatives.[7]

The one limit on the scope of "person" covered by §815(c)(1) is the special class of persons who are government employees acting under color of law.  As the Court held in *Meredith v. FMSHRC*, *177 F.3d 1042, 1052–56 (D.C. Cir. 1999)*, employees of the U.S. Department of Labor's Mine Safety and Health Administration, the agency that enforces the Mine Act, are generally not amenable to suit under 30 U.S.C. § 815(c).

*Meredith* provides three key reasons for its holding, none of which apply to Browning: (1) Congress has specified in other statutes when it wants federal employees to be subject to suit; (2) the Mine Act's dual-enforcement scheme would mean that the Secretary of Labor would be suing its own employees via an independent adjudicatory agency even though the Secretary can internally discipline its employees; and (3) affected individuals can sue federal employees via "the basic quadrumvirate of remedies—*Bivens*, the Federal Tort Claims Act ('FTCA'), the Tucker Act, and the Administrative Procedure Act—otherwise available for those claiming legally redressable injury from federal action (or inaction)."  *Id.* at 1055.

*Meredith* understood the legislative history and statutory scheme "to limit the

---

[7]  30 USC §816(a) also allows "any person" - not just management personnel - adversely affected by an order of the Commission to obtain review in the appropriate U.S. Court of Appeals.

meaning of the term 'persons' to those affiliated or associated with mining operations." *Id.*

In Browning's role as a pump man at the mine, he is plainly "affiliated or associated with mining operations." Accordingly, the Court's analysis of the legislative history in *Meredith* bolsters the plain language of the Act.

To avoid the obvious outcome of this analysis, Browning suggests a flawed approach. Browning argues that the statute's definition of potential remedies should limit the idea of who is subject to suit. However, the law of remedies is distinct from the question of whether a cause of action exists. "[T]he question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." *Franklin v. Gwinnett County. Public Schools*, *112 S.Ct. 1028 (1992) (quoting Davis v. Passman, 99 S.Ct. 2264, 2274 (1979)).*

Further, when the Mine Act explicitly commanded that the Commission "shall issue such relief as it deems appropriate, including, but not limited to . . . " - at 30 U.S.C. § 815(c)(3) - this broad grant of remedial power reinforced the maxim that an adjudicator "may use any available remedy to make good a wrong done." *Franklin*, *112 S.Ct. at 1033* (quoting *Bell v. Hood*, *66 S.Ct. 773, 777* (1946)).

The 2nd Circuit's interpretation of the Americans with Disabilities Act in

-13-

*Spiegel v. Schulman*, 604 F.3d 72, 79–80 (2d Cir. 2010) (per curiam), does not change this analysis. The Americans with Disabilities Act is unlike the Mine Act because the ADA does not contain its own retaliation cause of action, but rather incorporates Title VII's procedures, which do *not* apply to any "person" but rather only employers and related entities. *See* 42 U.S.C. § 2000e-5(b).

Browning makes much of §815(c)(3)'s last sentence that says that "any person" who violates the interference provision shall be subject to §§ 818 and 820(a)—two sections covering civil penalties and U.S. District Court injunctions that by their own terms only apply to an "operator." By Browning's logic, because Congress specified that "any person" would be subject to remedies that could be read to only apply to operators, only operators can be subject to suit. And Browning argues that Congress's explicit granting of broader remedial power via the "relief as it deems appropriate" language should not have any effect here because broad residual clauses must be read in line with specific examples.

The foundational error with Browning's logic is conflating the questions of who is subject to suit with the question of what the remedy can be.

The specification of certain remedies under §§ 818 and 820(a) addresses where injunctive actions to enforce a remedy should be channeled (i.e., U.S. District Court) and what a proper civil penalty amount is (i.e., "not more than $50,000").

-14-

Accordingly, it would not be proper for an ALJ to issue $100,000 for a civil penalty even if she "deems [it] appropriate." This is all that applying cases such as *Begay v. United States*, *128 S.Ct. 1581 (2008)*, require.

The flaw with Browning's logic can be shown by applying his logic to the facts of *Begay*. Browning would read the residual clause at the end of 18 USC §924(e)(2)(B)(ii), to not only limit the length of a prison term (i.e., 15 years for "violent felons" in possession versus 10 years for nonviolent felons), but also to limit whether felons who do not meet the enumerated examples of "violent felons" *can even be prosecuted*. Just as felons in possession are subject to prosecution regardless of their violent or nonviolent status, "persons" who interfere with rights under the Mine Act are subject to suit regardless of whether they are an operator. The question of the appropriate remedy (*cf.* the length of a prison sentence) is a different question and does not present a problem because Wilson does not seek a remedy that would be inconsistent with the Mine Act's specific examples.

Further, there is a recognized difference between statutes (such as the Armed Career Criminal Act) that put a general phrase at the end of a list of specific examples and those - such as §815(c)(3) - that use a general phrase first, and then provide specific examples later. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 202–05 (2012).

In addition, the Mine Act uses the phrase "relief as . . . appropriate, including, *but not limited to*." 30 U.S.C. § 815(c)(3)(emphasis added). Congress thus made clear that it did not set limits by its specific examples in §815(c).

Browning also argues that "a cause of action against non-management miners is not necessary to protect miners' representatives from harassment" (Browning Br. 33) because mine operators have a duty to prevent interference. He cites what happened in this instance as "proof" that mine operators can be trusted to always do the right thing - i.e., that an "honor system" of ensuring compliance with the statutory rights of miners is all that is needed. This argument demonstrates a lack of understanding as to why the Mine Act in general - and the Act's anti-interference provision specifically - were necessary to begin with. That is, there is a long history of tragic mine disasters in the U.S. that were caused by mine operators brazenly ignoring federal safety requirements. *See Council of Southern Mountains, Inc. v. FMSHRC, 751 F.2d 1418, 1420.* Similarly, nearly 40 years of case law regarding the Mine Act's anti-discrimination/anti-interference provision provides clear evidence that miners and their representatives are frequently discriminated against and interfered with for standing up for mine safety and health.

Browning's cause of action argument is little more than a policy disagreement with whom Congress chose to make subject to suit under §105(c)(1). Defendants

-16-

often do not think that they should be subject to suit. But Congress plainly made "any person" subject to suit under the Mine Act. The question of whether an action is truly necessary in a given case goes more to the individual facts of the case, not whether a cause of action exists.

Finally, it must be noted that Browning conflates "discrimination" with "interference" in his argument. Because he was a non-employee representative of miners, Wilson could not be "discriminated against" by anyone - not by a management or by a non-management person - because he was not subject to discharge, suspension, demotion, written warning, or any other type of discipline. However, he could be "interfered with" in the exercise of his statutory rights as a miners' rep.

When Congress enacted the Mine Act's anti-interference provision, it was well aware that non-employee 3rd parties could act as representatives of miners[8] - and that they could not be subjected to the typical types of "discrimination" that comprise the vast majority of §105(c) cases. Therefore, it must be assumed that Congress enacted the non-interference clause of §105(c)(1), in part, to protect those in the protected class who were not covered by the Act's anti-discrimination clause - i.e., to protect

---

[8] See §103(f), 30 USC §813(f)(representative of miners who is also an employee of the operator shall suffer no loss of pay while participating in mine inspections).

-17-

non-employee miners' reps. Indeed, it makes no sense that Congress would make it unlawful to interfere with the statutory rights of representatives of miners, yet have intended that non-management employees could harass/bully/interfere with them while they are performing the rights that Congress granted them.

Accordingly, while the Court does not need to reach this issue, if it does, it should apply the plain language of the statute and reject Browning's argument that Wilson lacks a cause of action against him as a non-management employee.

### B.  THE COURT NEED NOT REACH BROWNING'S 1ST AMENDMENT ARGUMENT; REGARDLESS, BROWNING'S CONDUCT AND SPEECH WERE NOT PROTECTED BY THE 1ST AMENDMENT

Browning also argues that even if he can be sued under §105(c)(1), that he has the 1st Amendment right to say whatever he wants to Wilson. However, the ALJ's order granting Browning's motion for summary decision did not depend on a 1st Amendment analysis - instead it turned on the ALJ's view that interference could not be proven by the facts of this case.  Accordingly, the Court should prudentially decline to address Browning 1st Amendment argument and reserve it for the agency adjudicator to determine in the first instance.

Regardless, however, the 1st Amendment issue raised by Browning does not provide an alternative basis for affirming the ALJ's improper decision. Indeed, once

again, the premise of Browning's argument is faulty. That is, Browning did not engage Wilson in a discussion about safety or health issues that affected his job[9], nor about anything for which the position of "representative of miners" was created by Congress. And, importantly, he was not engaged in "non-threatening" speech.[10] Instead, Browning was hovering over Wilson and yelling at him in an attempt to bully him into closing the safety examination books he was reviewing and leaving the mine site.[11]

As a threshold matter, this confrontation involved two private persons. Accordingly, there is no state action as would be required for a direct constitutional issue. Thus, at best, Browning can invoke the 1st Amendment via the canon of constitutional avoidance. *Clark v. Martinez*, *125 S.Ct. 716, 724-725 (2005).* But, the

---

[9]  Browning disingenuously claims that he was "express[ing his] views on mine safety". Browning Br. 44.

[10]  The ALJ found that the Browning was "agitated" and that he addressed Wilson in a manner that Wilson "may have perceived as threatening". *38 FMSHRC at 1165.* She also found that Browning's tone was "aggressive" and could have been interpreted as "intimidating". *38 FMSHRC at 1166.* Browning has not challenged any of these factual findings.

[11]  As has been explained, Browning criticized Wilson for pointing out safety violations to MSHA inspectors - which is precisely what a miners' rep is supposed to do when he accompanies a federal mine inspector on an inspection - and berated Wilson for allegedly having a vendetta against Armstrong Coal and for "taking money out of [his] pocket".

-19-

"longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Camreta v. Greene*, 131 S.Ct. 2020, 2031 (2011) (quoting Lyng v. Northwest Indian Cemetery Protective Assn, 108 S.Ct. 1319 (1988))*. That is, for the 1ˢᵗ Amendment question to properly come into play, the Court would first have to find that Browning violated the general interference analysis and then hold that applying the statute raises such serious constitutional concerns to warrant modifying the interference analysis. But if the Court agrees with Wilson that Browning interfered with his statutory rights, the proper outcome is a remand, not a constitutional analysis. *See Orlando Ventura*, *123 S.Ct. 353*. Accordingly, the Court need not reach the constitutional issue.

Regardless, on the merits, Browning's 1ˢᵗ Amendment argument fails. The Supreme Court has held that "words can in some circumstances violate laws directed not against speech but against conduct." *R.A.V. v. City of St. Paul, Minn., 112 S.Ct. 2538, 2546 (1992).*

Here, the ALJ found that Browning's "aggressive" comments "could have been interpreted at intimidating" and were "expressed . . . in an agitated manner that Wilson may have perceived as threatening." *38 FMSHRC at 1165–66.* As Wilson's affidavit explained, "Browning was standing about 1 ½ feet from me and leaning down over me" and "was yelling at me." *Wilson aff. at 2–3.* That is, Browning

invaded Wilson's personal space *at the mine* and yelled at him to put down the safety records and go home while Wilson was in the act of exercising his statutory rights. It is common sense that in this setting, Browning did not have an unfettered constitutional right to harass Wilson.

The fundamental problem with Browning's behavior was not just the content of the words (in essence, berating Wilson to stop exercising his statutory right to examine the company's safety records), but also the time, place, and manner of the comments - i.e. the totality of the circumstances. If Browning's confrontation of Wilson had occurred away from the mine site *or* if Browning had spoken in a calm, polite, non-threatening way at the mine, then perhaps this inquiry would be different. But bullying at the workplace plainly is not entitled to 1st Amendment protection.

A coal mine is not the public square, it is a highly regulated, nonpublic forum where reasonable time, place, and manner restrictions are entirely consistent with the 1st Amendment. *See, e.g., Aguilar v. Avis Rent A Car System, Inc.*, 980 P.2d 846, 868–75 (Cal. 1999) (Werdegar, J., concurring) (analyzing relationship between First Amendment and restrictions on speech in the workplace).

In *NLRB v. Gissel Packing Co.*, 89 S.Ct. 1918 (1969), which was cited by Browning (Browning Br. 39-43), the Supreme Court rejected a 1st Amendment challenge to a claim arising under the interference provision found at §8(a)(1) of the

-21-

National Labor Relations Act—the provision that forms the basis of the Mine Act's similar interference provision. At issue in *Gissel Packing* were communications from an employer urging the employees not to join the union because unionization might force him to close the plant. Although the communications were pure speech, the Supreme Court held that the employer's 1st Amendment rights had to be balanced against the employee's rights under the NLRA and that balancing "must be made in the context of its labor relations setting." *Id. at 1942.* In that context, the Supreme Court had no difficulty holding that the employer's speech constituted a threat of reprisal that was not protected under the 1st Amendment.

Browning cites *Tasty Baking Co. v. NLRB*, *254 F.3d 114, 124 (D.C. Cir. 2001)*, to suggest that for speech to be unprotected it must be not merely threatening, but "coercive." *See* Browning Br. 40, n. 11. *Tasty Baking,* however, does not stand for this proposition. In fact, this Court held that an employer's speech violates the NLRA if, "considering the totality of the circumstances, the statement **has a reasonable tendency** to coerce or to interfere with those rights". *Id. (emphasis added).* Of course, that is essentially the same test for interference under §105(c)(1) that the Commission approved of in *Secretary of Labor o/b/o McGary & Bowersox, et al. v. Marshall County Coal Co., et al., 38 FMSHRC 2006 (2016).*

Moreover, *Tasty Baking* did not include a 1st Amendment analysis, nor did it

find that the speech at issue was protected.  Indeed, *Tasty Baking* affirmed a finding that an employer's verbal statements constituted interference under the NLRA.[12]

Thus, the 1st Amendment balancing test essentially merges with the interference analysis approved by the Commission:  that is, whether the conduct at issue "can be reasonably viewed, from the perspective of members of the protected class and under the totality of the circumstances, as tending to interfere with the exercise of protected rights" and is not justified "with a legitimate and substantial reason whose importance outweighs the harm."  *Sec. of Labor o/b/o McGary & Bowersox, et al. v. Marshall County Coal Co.*, et al.,  *38 FMSHRC 2006 (2016).*  As noted in Wilson's opening brief, there can be no legitimate and substantial reason for anyone at the mine to yell at and berate a miners' rep because he is trying to perform the statutory rights that were granted to him by Congress.

This tension between a miner's statutory rights and the 1st Amendment rights of the employer was analyzed in *Secretary of Labor o/b/o Shemwell v. Armstrong Coal Co.*, *et al., 35 FMSHRC 1865 (ALJ 2013)*, which held that an operator did not

---

[12]   Indeed, all of the NLRA cases cited by Browning in his brief are inapposite. Unlike the case at bar, they all deal with a words spoken by an employer to captive audiences of employees during union organizing drives under a statute which specifically allows the expressing of "any views, argument or opinion" so long as such expression "contains no threat of reprisal or force or promise of benefit". 29 USC §158(c). The Mine Act, and specifically §105(c), does not contain a similar provision.

have an unfettered 1st Amendment right to file a state lawsuit against a miner - for the tort of 'wrongful use of civil proceedings" - after the Secretary of Labor declined to prosecute on his behalf a discrimination complaint that he had filed with MSHA under §105(c)(1) of the Mine Act. The ALJ ruled that the mine operator's lawsuit interfered with the miner's rights under the Mine Act, stating, "in an orderly society, one cannot seek to exercise an asserted right if it interferes with the manifest right of another." *Id. at 1867.*

Browning agues that because he has "absolutely no power - economic or otherwise - over Wilson," that essentially gives him an absolute privilege to say what he wants to Wilson in any way that he wants in any place that he wants. Browning Br. 42. As the facts of this case show, however, Browning did have the power to interrupt and interfere with Wilson and to literally stop him from being able to perform his statutory rights until the mine superintendent intervened.

Further, to the degree that Browning attempts to distinguish *Gissel Packing* based on the fact that it concerned a labor-management dispute where unequal economic power is part of the context, it must be acknowledged that in such organizing campaigns, vociferous debate is the expectation. In organizing campaigns, "freewheeling use of the written and spoken word . . . has been expressly fostered by Congress and approved by the NLRB." *Old Dominion Branch No. 96,*

*Nat'l Ass'n of Letter Carriers v. Austin, 94 S.Ct. 2770, 2775 (1974)*. But under the Mine Act, there is no expectation that a miners' representative must defend his statutory right to seek enforcement of mine safety laws against individual miners who would prefer that such laws be ignored and that miners' reps play no part in safety and health issues at the mine.

Browning also argues that Browning "had no way of knowing that the Mine Act could be used to penalize, rather than protect, his speech." Browning Br. 44. But it is common sense that an individual at work cannot yell at someone from 18 inches away for doing what the law allows him to do.[13] Browning cannot feign ignorance at what it means to be a bully. Indeed, Browning should not be allowed to intimidate and threaten a miners' representative who is looking out for mine safety and then seek refuge in the 1st Amendment to avoid the consequences.

## CONCLUSION

Browning concludes his brief by complaining that "Congress surely did not intend [for him], a non-management miner, to endure and finance a year and a half of costly litigation for expressing a few minutes of his views to Wilson" (Browning

---

[13] Browning was also familiar with the role of miners' reps at the mine, Indeed, he admitted to the MSHA special investigator that he told Wilson that there were other miners' reps at the mine who could perform the duties that Wilson was engaged in. Interview at 38.

Br. 46). First, Browning's statement that he has financed this litigation is disingenuous at best. His attorney below represented to the ALJ that she was representing Browning *pro bono*.[14] And based on the website for the Georgetown University Law Center's Appellate Litigation Program, as well as on the form submitted to the Court wherein Browning agreed to be represented by the Georgetown Program, it appears that he is being represented *pro bono* at the appellate level as well. More importantly, Browning was not innocently "expressing ... his views" to Wilson on the day in question. He was yelling at Wilson in an agitated manner in an attempt tp bully him into forgoing his statutory rights as a representative of miners. Such abusive conduct would not be condoned by Congress and should not be condoned by the Court.

WHEREFORE, for the foregoing reasons, as well as the reasons set forth in his opening brief, Michael Wilson respectfully requests that his Petition for Review be granted and that the decision of the Commission below be reversed.

Respectfully submitted,

*Tony Oppegard*

_____

_____

[14]  In fact, apparently in an effort to reduce litigation costs after Ms. Hinton's representation, the ALJ did not allow Wilson to depose witnesses to the incident in question.

TONY OPPEGARD
Attorney-at-Law
P.O. Box 22446
Lexington, Kentucky 40522
859-948-9239
tonyoppegard@gmail.com

*Wes Addington &  Evan B. Smith*

_____

WES ADDINGTON
EVAN B. SMITH
Attorneys-at-Law
APPALACHIAN CITIZENS' LAW CENTER
317 Main Street
Whitesburg, Kentucky 41858
606-633-3929
wes@appalachianlawcenter.org
evan@appalachianlawcenter.org

*Attorneys for Michael Wilson*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Reply Brief for Michael

Wilson was served on all counsel of record via the Court's electronic filing system

(CM/ECF) on this 23rd day of January, 2017.

*Tony Oppegard*

_____

TONY OPPEGARD
*Attorney for Michael Wilson*

-27-

CERTIFICATE OF COMPLIANCE

The foregoing Reply Brief for Michael Wilson complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and Circuit Rule 27 because it contains 6381 words (26 pages).


*Tony Oppegard*

_____

TONY OPPEGARD
*Attorney for Michael Wilson*

# ADDENDUM

## STATUTES CITED:

### 18 USC §924(e)(2)(B)(ii)

**(e) (2)** As used in this subsection—

    **(B)** the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

    **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

### 29 USC §158(c)

#### (c) Expression of views without threat of reprisal or force or promise of benefit

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

### 30 USC §802(f)

**(f)** "person" means any individual, partnership, association, corporation, firm, subsidiary of a corporation, or other organization;

### 30 USC §813(f)

#### (f) Participation of representatives of operators and miners in inspections

Subject to regulations issued by the Secretary, a representative of the operator and a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine made pursuant to the provisions of subsection (a), for the purpose of aiding such inspection and to participate in pre- or post-inspection conferences held at the mine. Where there is no authorized miner representative, the Secretary or his authorized representative shall consult with a

reasonable number of miners concerning matters of health and safety in such mine. Such representative of miners who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection made under this subsection. To the extent that the Secretary or authorized representative of the Secretary determines that more than one representative from each party would further aid the inspection, he can permit each party to have an equal number of such additional representatives. However, only one such representative of miners who is an employee of the operator shall be entitled to suffer no loss of pay during the period of such participation under the provisions of this subsection. Compliance with this subsection shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter.

## 30 USC §814(a)

### (a) Issuance and form of citations; prompt issuance

If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation. The requirement for the issuance of a citation with reasonable promptness shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter.

## 30 USC §814(b)

### (b) Follow-up inspections; findings

If, upon any follow-up inspection of a coal or other mine, an authorized representative of the Secretary finds (1) that a violation described in a citation issued pursuant to subsection (a) has not been totally abated within the period of time as originally fixed therein or as subsequently extended, and (2) that the period of time for the abatement should not be further extended, he shall determine the extent of the area affected by the violation and shall promptly issue an order requiring the operator of such mine or his agent to immediately cause all persons, except those persons referred to in subsection (c), to be withdrawn from, and to be

2

prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

## 30 USC §814(g)(1)

**(g) Untrained miners**

**(1)** If, upon any inspection or investigation pursuant to section 813 of this title, the Secretary or an authorized representative shall find employed at a coal or other mine a miner who has not received the requisite safety training as determined under section 825 of this title, the Secretary or an authorized representative shall issue an order under this section which declares such miner to be a hazard to himself and to others, and requiring that such miner be immediately withdrawn from the coal or other mine, and be prohibited from entering such mine until an authorized representative of the Secretary determines that such miner has received the training required by section 825 of this title.

## 30 USC §815(c)(1)

**(c) Discrimination or interference prohibited; complaint; investigation; determination; hearing**

**(1)** No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner, representative of miners or applicant for employment in any coal or other mine subject to this chapter because such miner, representative of miners or applicant for employment has filed or made a complaint under or related to this chapter, including a complaint notifying the operator or the operator's agent, or the representative of the miners at the coal or other mine of an alleged danger or safety or health violation in a coal or other mine, or because such miner, representative of miners or applicant for employment is the subject of medical evaluations and potential transfer under a standard published pursuant to section 811 of this title or because such miner, representative of miners or applicant for employment has instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding, or because of the exercise by such miner, representative of miners or applicant for employment on behalf of himself or others of any statutory right afforded by this chapter.

## 30 USC §815(c)(2)

**(2)** Any miner or applicant for employment or representative of miners who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may, within 60 days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate. Such investigation shall commence within 15 days of the Secretary's receipt of the complaint, and if the Secretary finds that such complaint was not frivolously brought, the Commission, on an expedited basis upon application of the Secretary, shall order the immediate reinstatement of the miner pending final order on the complaint. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall immediately file a complaint with the Commission, with service upon the alleged violator and the miner, applicant for employment, or representative of miners alleging such discrimination or interference and propose an order granting appropriate relief. The Commission shall afford an opportunity for a hearing (in accordance with section 554 of title 5 but without regard to subsection (a)(3) of such section) and thereafter shall issue an order, based upon findings of fact, affirming, modifying, or vacating the Secretary's proposed order, or directing other appropriate relief. Such order shall become final 30 days after its issuance. The Commission shall have authority in such proceedings to require a person committing a violation of this subsection to take such affirmative action to abate the violation as the Commission deems appropriate, including, but not limited to, the rehiring or reinstatement of the miner to his former position with back pay and interest. The complaining miner, applicant, or representative of miners may present additional evidence on his own behalf during any hearing held pursuant to his [1] paragraph.

## 30 USC §815(c)(3)

**(3)** Within 90 days of the receipt of a complaint filed under paragraph (2), the Secretary shall notify, in writing, the miner, applicant for employment, or representative of miners of his determination whether a violation has occurred. If the Secretary, upon investigation, determines that the provisions of this subsection have not been violated, the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission, charging discrimination or interference in violation of paragraph (1). The Commission shall afford an opportunity for a hearing (in accordance with section 554 of title 5 but without regard to subsection (a)(3) of such section), and

4

thereafter shall issue an order, based upon findings of fact, dismissing or sustaining the complainant's charges and, if the charges are sustained, granting such relief as it deems appropriate, including, but not limited to, an order requiring the rehiring or reinstatement of the miner to his former position with back pay and interest or such remedy as may be appropriate. Such order shall become final 30 days after its issuance. Whenever an order is issued sustaining the complainant's charges under this subsection, a sum equal to the aggregate amount of all costs and expenses (including attorney's fees) as determined by the Commission to have been reasonably incurred by the miner, applicant for employment or representative of miners for, or in connection with, the institution and prosecution of such proceedings shall be assessed against the person committing such violation. Proceedings under this section shall be expedited by the Secretary and the Commission. Any order issued by the Commission under this paragraph shall be subject to judicial review in accordance with section 816 of this title. Violations by any person of paragraph (1) shall be subject to the provisions of sections 818 and 820(a) of this title.

## 30 USC §816(a)

### (a) Petition by person adversely affected or aggrieved; temporary relief

(1) Any person adversely affected or aggrieved by an order of the Commission issued under this chapter may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit, by filing in such court within 30 days following the issuance of such order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission and to the other parties, and thereupon the Commission shall file in the court the record in the proceeding as provided in section 2112 of title 28. Upon such filing, the court shall have exclusive jurisdiction of the proceeding and of the questions determined therein, and shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside, in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified. No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any party shall apply to the court for leave to adduce additional

evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be made a part of the record. The Commission may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The Commission may modify or set aside its original order by reason of such modified or new findings of fact. Upon the filing of the record after such remand proceedings, the jurisdiction of the court shall be exclusive and its judgment and degree shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of title 28.

**(2)** In the case of a proceeding to review any order or decision issued by the Commission under this chapter, except an order or decision pertaining to an order issued under section 817(a) of this title or an order or decision pertaining to a citation issued under section 814(a) or (f) of this title, the court may, under such conditions as it may prescribe, grant such temporary relief as it deems appropriate pending final determination of the proceeding, if—

(A) all parties to the proceeding have been notified and given an opportunity to be heard on a request for temporary relief;

(B) the person requesting such relief shows that there is a substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and

(C) such relief will not adversely affect the health and safety of miners in the coal or other mine.

**(3)** In the case of a proceeding to review any order or decision issued by the Panel under this chapter, the court may, under such conditions as it may prescribe, grant such temporary relief as it deems appropriate pending final determination of the proceeding, if—

(A) all parties to the proceeding have been notified and given an opportunity to be heard on a request for temporary relief; and

(B) the person requesting such relief shows that there is a substantial likelihood that he will prevail on the merits of the final determination of the proceeding.

**30 USC §817(a)**

**(a) Withdrawal orders**

If, upon any inspection or investigation of a coal or other mine which is subject to this chapter, an authorized representative of the Secretary finds that an imminent danger exists, such representative shall determine the extent of the area of such mine throughout which the danger exists, and issue an order requiring the operator of such mine to cause all persons, except those referred to in section 814(c) of this title, to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such imminent danger and the conditions or practices which caused such imminent danger no longer exist. The issuance of an order under this subsection shall not preclude the issuance of a citation under section 814 of this title or the proposing of a penalty under section 820 of this title.

## 30 USC §818(a)(1)

**(a) Civil action by Secretary**

(1) The Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States for the district in which a coal or other mine is located or in which the operator of such mine has his principal office, whenever such operator or his agent—

(A) violates or fails or refuses to comply with any order or decision issued under this chapter, or fails or refuses to comply with any order or decision, including a civil penalty assessment order, that is issued under this chapter,

(B) interferes with, hinders, or delays the Secretary or his authorized representative, or the Secretary of Health and Human Services or his authorized representative, in carrying out the provisions of this chapter,

(C) refuses to admit such representatives to the coal or other mine,

(D) refuses to permit the inspection of the coal or other mine, or the investigation of an accident or occupational disease occurring in, or connected with, such mine,

(E) refuses to furnish any information or report requested by the Secretary or the Secretary of Health and Human Services in furtherance of the provisions of this chapter, or

(F) refuses to permit access to, and copying of, such records as the Secretary or the Secretary of Health and Human Services determines necessary in carrying out the provisions of this chapter.

**30 USC §820(a)**

**(a) Civil penalty for violation of mandatory health or safety standards**

(1)The operator of a coal or other mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this chapter, shall be assessed a civil penalty by the Secretary which penalty shall not be more than $50,000 for each such violation. Each occurrence of a violation of a mandatory health or safety standard may constitute a separate offense.

(2) The operator of a coal or other mine who fails to provide timely notification to the Secretary as required under section 813(j) of this title (relating to the 15 minute requirement) shall be assessed a civil penalty by the Secretary of not less than $5,000 and not more than $60,000.

(3) (A) The minimum penalty for any citation or order issued under section 814(d)(1) of this title shall be $2,000.

(B) The minimum penalty for any order issued under section 814(d)(2) of this title shall be $4,000.

(4) Nothing in this subsection shall be construed to prevent an operator from obtaining a review, in accordance with section 816 of this title, of an order imposing a penalty described in this subsection. If a court, in making such review, sustains the order, the court shall apply at least the minimum penalties required under this subsection.

**30 USC §820(c)**

**(c) Liability of corporate directors, officers, and agents**

Whenever a corporate operator violates a mandatory health or safety standard or knowingly violates or fails or refuses to comply with any order issued under this chapter or any order incorporated in a final decision issued under this chapter, except an order incorporated in a decision issued under subsection (a) or section 815(c) of this title, any director, officer, or agent of such corporation who knowingly authorized, ordered, or carried out such violation, failure, or refusal shall be subject to the same civil penalties, fines, and imprisonment that may be imposed upon a person under subsections (a) and (d).

**30 USC §820(e)**

**(e) Unauthorized advance notice of inspections**

Unless otherwise authorized by this chapter, any person who gives advance notice of any inspection to be conducted under this chapter shall, upon conviction, be punished by a fine of not more than $1,000 or by imprisonment for not more than six months, or both.

**30 USC §820(g)**

**(g) Violation by miners of safety standards relating to smoking**

Any miner who willfully violates the mandatory safety standards relating to smoking or the carrying of smoking materials, matches, or lighters shall be subject to a civil penalty assessed by the Commission, which penalty shall not be more than $250 for each occurrence of such violation.

**30 USC §823(d)(2)(A)(iii)**

**(d) Proceedings before administrative law judge; administrative review**

**(2)** The Commission shall prescribe rules of procedure for its review of the decisions of administrative law judges in cases under this chapter which shall meet the following standards for review:

**(A) (iii)** Each issue shall be separately numbered and plainly and concisely stated, and shall be supported by detailed citations to the record when assignments of error are based on the record, and by statutes, regulations, or principal authorities relied upon. Except for good cause shown, no assignment of error by any party shall rely on any question of fact or law upon which the administrative law judge had not been afforded an opportunity to pass. Review by the Commission shall be granted only by affirmative vote of two of the Commissioners present and voting. If granted, review shall be limited to the questions raised by the petition.

**42 USC §2000e-5(b)**

**(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful**

9

**practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause**

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d). If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d), from the date upon which the Commission is authorized to take action with respect to the charge.